UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80508-CIV-MARRA/JOHNSON

BRANCH BANKING AND TRUST
COMPANY,

 Plaintiff,

vs.

U.S. BANK NATIONAL ASSOCIATION,
U.S. BANK TRUST NATIONAL ASSOCIATION,
and OCWEN LOAN SERVICING, LLC,

 Defendants.
_____/

U.S. BANK NATIONAL ASSOCIATION
and U.S. BANK TRUST NATIONAL
ASSOCIATION,

 Counterclaimants/Cross-Claimaints

vs.

BRANCH BANKING AND TRUST
COMPANY,

 Counterclaim Defendant, and

OCWEN LOAN SERVICING, LLC

 Cross-Claim Defendant.
_____/

**OPINION AND ORDER**

 This cause is before the Court upon Plaintiff Branch Banking and Trust Company's

Motion to Dismiss Counterclaim [DE 27] and Defendants U.S. Bank National Association and

U.S. Bank Trust National Association's Motion to File Surreply Memorandum [DE 43]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

## I. Background

### A. The Counterclaims

The following allegations are set forth in Defendants U.S. Bank National Association ("U.S. Bank NA") and U.S. Bank Trust National Association's ("U.S. Bank Trust") (collectively, "U.S. Bank" "Defendants") Counterclaims against Plaintiff Branch Banking and Trust Company ("BB&T" "Plaintiff").

BB&T is successor to an agreement to service loans on behalf of Defendants' predecessors. The Sale and Servicing Agreement (SSA) governs the transactions relating to the servicing of the loans. Under the SSA, BB&T's powers and duties as servicer include collecting from mortgage loan obligors the monthly payments due on such loans, pursuing past due loan payments, exercising collection rights, enforcing remedies, settling default claims as well as other responsibilities. (Counterclaim ¶ 9.) Under the SSA, the servicer is required to deposit all amounts received or collected with respect to mortgage loans, including defaulted mortgage loans, minus the servicer fees authorized by the SSA, into a collection account. (Counterclaim ¶ 10.) Beginning in 2001, BB&T's predecessor and then BB&T performed its responsibilities under the SSA through a sub-servicer/agent Ocwen Loan Servicing LLC ("Ocwen"). (Counterclaim ¶ 11.)

The Counterclaims allege that BB&T has failed to deposit and continues to fail to deposit into the collection account the entire amount of the monthly payments actually collected with respect to certain defaulted mortgage loans because Ocwen has withheld and diverted those

proceeds and has instead paid the diverted proceeds to its own account. The aggregate amount of the diverted proceeds is currently in excess of $11,150,00.00. (Counterclaim ¶ 13.) In addition, Ocwen provided U.S. Bank with certificates containing false and misleading statements which understated and misrepresented the amount of diverted proceeds. (Counterclaim ¶ 17.) Moreover, BB&T, through the omissions and negligence of Ocwen, has failed to undertake and pursue collection actions with respect to defaulted mortgage loans, and failed to recover payments that could have been received from such loans for deposit to the collection account. (Counterclaim ¶ 18.)

Based on these allegations, U.S. Bank brings a counterclaim for Breach of Contract (Counterclaim I) and Breach of Fiduciary Duty (Counterclaim II) against BB&T.

B.  The Relevant Contractual Provisions

Section 4.01. Servicing Standard.
(a) The Servicer is hereby authorized to act as agent for the Grantor Trust and In such capacity shall manage, service, administer and make collections on the Loans, and perform the other actions required by the Servicer under this Agreement and pursuant to the standards set forth below (the "Servicing Standard"). In performing its obligations hereunder the Servicer shall at all times act in good faith and in a commercially reasonable manner in accordance with all requirements of applicable law . . . . The Servicer . . . shall have full power and authority . . . to do any and all things in connection with such servicing and administration which are consistent with the manner in which prudent servicers service loans similar to the Loans . . . .

Section 4.02. Subservicing Arrangements.
The Servicer may perform its responsibilities relating to servicing through other subservicers, agents or independent contractors; however, no provision of this Agreement shall be deemed to relieve the Servicer of any of its duties and obligations to the Grantor Trustee or the Grantor Trust Certificateholder with respect to the servicing and administration of the Loans; it being understood that the Servicer shall be obligated with respect thereto to the same extent and under the same terms and conditions as if it alone were performing all duties and obligations set forth in this Agreement in connection with the collection, servicing and administration of such Loans.

Section 4.23. Servicer Not Responsible.
The Servicer shall not be responsible or liable for, or in breach of any of
its representations, warranties or agreements under this Agreement resulting from,
the acts or omissions to act of any other party to this Agreement or any other
Person . . .

Section 9.01. Indemnification; Third Party Claims.
(b) The Servicer shall indemnify, defend and hold harmless the Trust, the Grantor Trust, the Indenture Trustee, the Owner Trustee in its individual capacity, the Grantor Trustee, the Backup Servicer [and] the Seller…from and against any and all costs, expenses, losses, claims, damages, and liabilities to the extent that such cost, expense, loss, claim, damage or liability arose out of, or was imposed upon [them]….through the breach of this Agreement by the Servicer, the negligence, willful misfeasance, or bad faith of the Servicer in the performance of its duties under this Agreement or by reason of reckless disregard of its obligations and duties under this Agreement. Such indemnification shall include, without limitation, reasonable fees and expenses of counsel and expenses of litigation.

Section 9.03. Limitation on Liability of the Servicer, the Backup Servicer and others.
None of the Servicer, the Backup Servicer, or any of their directors,
officers, employees or agents shall be under any liability to the Grantor Trust, the Grantor Trustee or to the Grantor Trust Certificateholder or any Securityholder for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Servicer, the Backup Servicer or any such Person against any breach of warranties, representations or covenants made herein or any liability which would otherwise be imposed by reason of willful misfeasance, bad faith or negligence in performing or failing to perform duties hereunder or by reason of reckless disregard of obligations and duties hereunder. The Servicer, the Backup Servicer and any of their directors, officer, employees or agents may rely in good faith on any document of any kind in accordance with the Servicing Standard with respect to any document that prima facie has been properly and duty executed and submitted by any Person respecting any matters arising hereunder.

Section 12.05. Governing Law.
THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE
WITH THE LAWS OF THE STATE OF NEW YORK AND THE
OBLIGATIONS, RIGHTS AND REMEDIES HEREUNDER SHALL BE
DETERMINED IN ACCORDANCE WITH SUCH LAWS, WITHOUT GIVING
EFFECT TO PRINCIPLES OF CONFLICTS OF LAW.

### C. Summary of the Parties' Arguments

In moving to dismiss the Breach of Contract claim, BB&T states that this claim is barred by contractual waivers and limitations of liability included in the SSA. With respect to the Breach of Fiduciary Duty claim, BB&T argues that U.S. Bank has not pled facts or circumstances giving rise to a fiduciary duty. (Mot. at 8.) In making that argument, BB&T contends that the SSA creates an arm's length commercial relationship and disclaims any fiduciary duty. (Mot. at 9-14.) Finally, BB&T points out that the Breach of Fiduciary Duty is duplicative of its Breach of Contract claim. (Mot. at 14.)

In response, U.S. Bank contends that the Counterclaim has stated a claim for breach of implied fiduciary duty arising from their relationship with BB&T as their servicer. (Resp. at 13.) With respect to the Breach of Contract claim, U.S. Bank claims the SSA makes all of Ocwen's acts attributable to BB&T and that the SSA does not exonerate BB&T from liability. (Resp. at 7-11.)

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). When

considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. Discussion

A. Breach of Contract[1]

After careful review of the contract, the Court finds that the allegations in the Counterclaim give rise to a Breach of Contract claim and the motion to dismiss this claim must be denied.  In making this determination, the Court relies on section 9.03 of the SSA.  Although section 9.03 of the SSA limits liability for the servicer or subservicer, it does not make the servicer or subservicer immune from suit.  Instead, section 9.03 imposes liability on the servicer or subservicer due to "willful malfeasance, bad faith or negligence" or "reckless disregard of obligations and duties hereunder."  A review of the Counterclaim shows that Defendants have adequately pled allegations that meet that standard.  The Counterclaim states that Plaintiff has failed to deposit into the collection account the entire amount of the monthly payments actually collected. (Counterclaim ¶¶ 13, 20.)  It is further alleged that the servicer certificates provided to Defendants contained *false and misleading* statements. (Counterclaim ¶¶ 17, 20) (emphasis added).  Moreover, the Counterclaim states that BB&T has failed to diligently undertake and pursue collection actions and failed to recover payments "through the omissions and *negligence* of its sub-servicer agent." (Counterclaim ¶¶ 18, 20) (emphasis added).  These allegations, if true, rise to the level of willful malfeasance, bad faith, negligence and recklessness.  In so finding, the

---

[1] The parties disagree whether Florida or New York law governs the breach of contract claim.  Regardless of which law applies, the Court finds that a claim for breach of contract exists.

Court rejects Plaintiff's argument that section 4.23 renders it non-liable for the acts of its subservicer. That provision must be read in conjunction with section 4.02 which explicitly provides that the servicer is liable for the acts of its subservicer.[2]

For the reasons stated herein, the Court finds that the breach of contract claim is properly pled and the motion to dismiss on this basis is denied.

B. Breach of Fiduciary Duty

The Court begins its analysis by noting that Defendants assert they have stated a claim for breach of implied fiduciary duty arising from their relationship with Plaintiff as Servicer. (Resp. at 13.) In making that argument, Defendants acknowledge that, under Florida law, "[c]ourts have found a fiduciary relation implied in law when 'confidence is reposed by one party and a trust accepted by the other.'" (Resp. at 14 quoting First Nat'l Bank and Trust Co. v. Pack, 789 So. 2d 411, 414-15 (Fla. Dist. Ct. App. 2001)); see Maxwell v. First United Bank, 782 So. 2d 931, 933-34 (Fla. Dist. Ct. App. 2001). To find an implied fiduciary relationship, the specific factual circumstances surrounding the transaction and the relationship of the parties must be examined. First Nat'l Bank, 789 So. 2d at 414-15; Maxwell, 782 So. 2d at 933-34; Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994). The same standard exists under New York law. See Sergeants Benev. Ass'n Annuity Fund v. Renck, 796 N.Y.S.2d 77, 79 (N.Y. App. Div.

---

[2] The Court disagrees with Defendants that section 9.01 of the SSA supports their position. That provision applies only to claims by third parties against Defendants for which they could seek indemnity from Plaintiff. The breach of contract claim is unrelated to that type of third party claim. Thus, although the Court is ruling in favor of Defendants, it does not rely on section 9.01 in doing so.

2005) citing Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8 (N.Y. App. Div. 1998).[3]

In support of their argument that an implied fiduciary duty claim has been pled, Defendants point out that the counterclaim alleges that collections from the defaulted mortgage loans are "entirely within the control of the Servicer," that the Trustees rely entirely on the Servicer to collect, report and deposit such payments in the Collection Account and that the Trustees "reasonably and fully believed and expected" that Plaintiff would not "favor their own interests." (Resp. at 16 citing Counterclaim ¶ 12.)  These obligations, however, are nothing more than the duties envisioned under the SSA and to which the parties agreed.  Noticeably absent are any allegations regarding confidence being reposed by one party and a trust accepted by the other. Indeed, none of the allegations discuss the specific nature of the relationship between the parties and how the relationship of trust and confidence arose.  Nor does the Counterclaim state that the breach of fiduciary duty claim should be implied from the relationship of the parties. Hence, Defendants have not properly pled a breach of implied fiduciary duty.

Moreover, the virtually identical nature of the allegations pled in the breach of contract and breach of fiduciary duty claims gives rise to an additional problem for Defendants.  A cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim

---

[3] Plaintiff argues that New York law controls. Defendants claim that Florida law should be applied, but they also state under either New York or Florida law, they have stated a claim for breach of implied fiduciary duty.  The Court notes that, with respect to Plaintiff's argument that this claim is partially barred under the statute of limitations (Mot. at 15), Florida and New York law differ.  Compare Wiesenthal v. Wiesenthal, 838 N.Y.S.2d 581, 583 (N.Y. App. Div. 2007) (three year statute of limitations) with Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 295 (Fla. Dist. Ct. App. 2007) (four year statute of limitations).  Plaintiff correctly points out that Defendants have not challenged the argument that the claims are partially time barred.  However, because Plaintiff does not argue that the claim is totally barred by the statute of limitations, resolution of this issue is unnecessary at this time.  Moreover, this issue may require resolution of factual questions.

cannot stand under New York law.  William Kaufman Organ., Ltd., v. Graham & James LLP, 703 N.Y.S.2d 439, 442 (N.Y. App. Div. 2000); Perl v. Smith Barney, Inc., 646 N.Y.S.2d 678, 680 (N.Y. App. Div. 1996); Brooks v. Key Trust Co. Nat. Ass'n., 809 N.Y.S.2d 270, 272 (N.Y. App. Div. 2006).  Likewise, under Florida law, the economic loss rule prohibits tort actions to recover "solely economic damages for those in contractual privity" to prevent the parties from "circumventing the allocation of losses set forth in the contract." Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004).  Put another way, the economic loss rule bars recovery in tort where the act "complained of relates to the performance of the contract." Allen v. Stephan Co., 784 So.2d 456, 457 (Fla. Dist. Ct. App. 2000).  That stated, the economic loss rule "has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla.1996).[4]

In asserting the breach of fiduciary duty claim, the Counterclaim states that Plaintiff failed to deposit the proceeds into the Collection Account and collect all payments recoverable from the mortgage loans.  (Counterclaim ¶ 26.)  Significantly, these same allegations are pled in

---

[4] The Court rejects Defendants' reading of Interstate Securities Corp. v. Hayes Corp., 920 F.2d 769 (11th Cir. 1991) as support for a finding that the economic loss rule does not apply.  In that case, the Eleventh Circuit held that the economic loss rule barred breach of fiduciary duty claims.  Id. at 776-77.  The Court does note, however, that subsequent to Interstate the Florida Supreme Court issued several opinions that further clarified the economic loss rule.  See Indemnity Ins. Co. of N. Am. v. American Aviation, Inc., 891 So. 2d 532 (Fla. 2004); Moransais v. Heathman, 744 So. 2d 973 (Fla. 1999).  In any event, neither of those cases support a finding that the breach of fiduciary duty claim, as currently pled, is not barred by the economic loss rule.

the breach of contract claim as evidenced by the allegations that Plaintiff failed to deposit proceeds into the Collection Account and failed to collect and recover uncollected payments as required under the SSA. (Counterclaim ¶ 20.)  Thus, none of the acts complained of by Plaintiff are independent from the acts that allegedly breached the contract.  Given the similarity between the obligations under the contract and the acts that Defendants identify as constituting a breach of implied fiduciary duty, the breach of implied fiduciary duty, as pled, is barred under both New York and Florida law.

Accordingly, the claim for breach of fiduciary duty is dismissed, however, the Court will grant Defendants leave to amend the breach of fiduciary claim to cure the deficiencies outlined herein.[5]

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiff's Motion to Dismiss Counterclaim [DE 27] is **GRANTED IN PART AND DENIED IN PART**.  Defendants are granted leave to file an amended counterclaim following the directives set forth in this Order.

2) Defendants' Motion to File Surreply Memorandum [DE 43] is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 8th day of September, 2008.

KENNETH A. MARRA
United States District Judge

---

[5] Of course, Defendants must replead this claim in good faith and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.